SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

| | |
|---|---|
| TWIN LAKES PLAZA, LLC, | NO. 22-2-10190-3 KNT |
| Plaintiff, | COMPLAINT |
| v. | |
| EAGLE WEST INSURANCE COMPANY, | |
| Defendant. | |

Twin Lakes Plaza, LLC ("Twin Lakes") brings this action against Eagle West Insurance Company ("Eagle West") and alleges as follows:

### I.  PARTIES

1.1. **Plaintiff Twin Lakes Plaza, LLC**.  Twin Lakes is a limited liability company organized under the laws of the State of Washington and has its principal place of business in King County, Washington.

1.2. **Defendant Eagle West Insurance Company.**  Defendant Eagle West is an insurance company incorporated in the State of California, with its principal place of business in Monterey, California.  Eagle West is a wholly owned subsidiary of Capital Insurance Group,

which is incorporated in the State of California. Eagle West is licensed to sell, and does sell, insurance in the State of Washington, including the insurance policy issued to Twin Lakes that is the subject of this lawsuit.

## II.  JURISDICTION AND VENUE

2.1.   This Court has jurisdiction over the parties and the subject matter of this action pursuant to RCW 2.08.010.

2.2.   Venue is proper in this Court pursuant to RCW 48.05.220 and RCW 4.12.025.

## III.  FACTUAL BACKGROUND

3.1.   Twin Lakes owns an apartment complex located at 3300-3330 SW 320th Street Federal Way, Washington 98023 (the "Property"), which it uses for rental income. The Property was built in 1968 and consists of four two-story, multiunit residential buildings. Three of the buildings, including the building that is the subject of this lawsuit, consist of four first-floor apartment units and six second-floor apartment units. The fourth building has four units on both floors. The buildings are similar in exterior appearance.

3.2.   Eagle West issued Policy No. 25-BOP-2-070005599 to Twin Lakes, with an effective date from September 1, 2019, to September 1, 2020 (the "Policy").

3.3.   The Policy's "Named Insured" is Twin Lakes Plaza LLC. The Policy insures the Property, which includes the building that is the subject of this lawsuit.

3.4.   The Policy is an "all-risk" policy that provides broad property and business income coverage for "direct physical loss of or damage to" the Property except where excluded. The Policy also provides additional coverages including, but not limited, to: Debris Removal, Extra Expense, Extended Business Income, and Building Ordinance.

3.5. The Policy provides property coverage on a Replacement Cost Value basis for up to 125% of the Limit of Insurance in the Declarations, which is $5,547,278.00. The Policy also provides Business Income coverage for up to 24 months after the date of the loss during the "period of restoration."

3.6. On December 21, 2019, one of the four buildings on the Property sustained significant fire damage (the "Building"). The Building is located at 3300 SW 320th St, Federal Way, WA 98023.

3.7. The fire began in an upper-floor apartment unit in the northwest corner of the Building. The fire combusted or charred the entirety of the second floor. The first floor additionally sustained heavy water damage during the efforts to put out the fire. As a result of the damage, the Building was almost entirely demolished except for its concrete foundations, slab, first floor framing, and second floor joists.

3.8. Twin Lakes provided timely notice of the fire to Eagle West and submitted a claim for the loss under the Policy.

3.9. Eagle West retained Atlas Consulting ("Atlas") to prepare a preliminary repair estimate for the Building that would incorporate the remaining components of the foundation, slab, first floor framing, and second floor joists in the rebuild. Atlas completed its preliminary repair estimate on April 16, 2020. Atlas estimated the Replacement Cost Value ("RCV") of the repairs to be $1,438,429.50, including overhead, profit, and Washington State sales tax. After deducting $438,036.32 for depreciation, Atlas estimated a Proposed Actual Cash Value ("ACV") of $1,000,393.18 for the repairs. The estimate also included $126,976.08 for additional items that have the "highest potential of becoming required during the reconstruction process," which included a line item of $55,174.86 for "Market conditions & material cost increases (5%)."

COMPLAINT - 3

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

3.10. Over the past two and a half years, Twin Lakes has retained numerous experts to investigate whether it is feasible to use the remaining structural components to reconstruct the Building. Each of these experts expressed serious concerns with using these structural elements and recommended that they not be used in the rebuild.

3.11. On September 25, 2020, following an investigation by Visser Engineering ("Visser"), Visser wrote in its report that nearly all of the framing elements would need to be removed and replaced due to the "sporadic observable rot and fungal growth throughout."

3.12. On October 3, 2020, following an investigation and field testing by engineers at Pacific Testing & Inspection (PTI), PTI wrote "We recommend that the foundation and slab not be used for the proposed structure, and that it is removed."

3.13. Twin Lakes' architect for the rebuild, Michael Hovland, has also repeatedly explained—in findings provided to Eagle West—why the remaining structural elements should not be repurposed in the reconstruction of the building. For example, on February 22, 2022, Mr. Hovland explained: "There is also an even more practical reason for demolishing the rest of the building. The Structural Engineer has indicated that we would have to re-evaluate the remaining structure to make sure they will tolerate the loads. Analyzing the remaining footing and walls will take time and money – and more engineering fees. As we have NOT completely analyzed the remaining structure, we may find out that the 'repair' or upgrade is not feasible for structural reasons. The concrete is over 50 years old. 50 years has been the traditional 'lifespan' of concrete. I suspect we will find out the remaining structure is not worth saving or upgrading. . . . As a final note, it is my opinion, that trying to keep the portion of the structure that remains will cost more and quality will be compromised. The remainder of the building should be removed."

3.14. On December 2, 2020, Twin Lakes sent Eagle West and the Office of the Insurance Commissioner a 20-day notice related to Eagle West's violations of the Insurance Fair Conduct Act ("IFCA").

3.15. On February 2, 2021, Troon Construction Co. Inc. ("Troon") prepared an estimate for the cost of reconstructing the Building based on the plan prepared by Mr. Hovland. At the time, Troon estimated that the rebuild would take approximately seven months and cost roughly $1,484,687.00, excluding certain costs such as Washington State Sales Tax, building permits, and appliances.

3.16. On February 9, 2021, RJ Day Construction ("RJ Day") also prepared an estimate for the cost of reconstructing the Building without the remaining structural components. At the time, RJ Day estimated that the rebuild would cost approximately $1,690,574.00, excluding certain costs such as Washington State Sales Tax, building permits, and addressing any unstable soil conditions.

3.17. On February 18, 2021, Eagle West provided a preliminary engineering report dated October 21, 2020 from Degenkolb Engineers ("Degenkolb") in response to the recommendations from Eagle West's builder, engineer, and architect that the existing structure should not be used for the reconstruction. Not only did Degenkolb's preliminary report fail to certify its findings for purposes of supporting the necessary repair activities to the satisfaction of the architect, builder, and authority with jurisdiction for issuing the necessary building permits, but Eagle West delayed providing this report to Twin Lakes for nearly four months after receiving it from Degenkolb, prejudicing Twin Lakes' ability to address the findings and progress towards beginning the rebuild.

3.18. On March 10, 2021, Twin Lakes sent Eagle West and the Office of the Insurance Commissioner another IFCA notice, attaching the February repair estimates from Troon and RJ Day, and a bid from Russ Lloyd Clearing & Demolition to remove and dispose of the existing wood structure. The letter reiterated that "in order to properly repair the structure to like-kind-and-quality workmanship and to comply with local code, it will be necessary to replace the foundation slab and replace the wall studs. The existing wall studs may not comply with current building requirements. Similarly, testing has shown defects in the concrete foundation, likely necessitating foundation repair." Twin Lakes accordingly explained that Eagle West was acting in bad faith by failing to agree to the necessary repair costs based on Eagle West's speculative and conjectural proposition that the existing slab and studs could be reused, improperly relying on the Degenkolb report that failed to adequately address the myriad issues with reusing the existing structural components, and unreasonably delaying in providing the Degenkolb report to Twin Lakes. Twin Lakes thus demanded that Eagle West promptly agree to pay the reasonable and necessary repair costs for the structure, lost rental income from the fire through the completion of repairs, and the minimal attorneys' fees Twin Lakes had incurred by that time in preparing its insurance claim.

3.19. On March 26, 2021, Eagle West responded to Twin Lakes' IFCA notice and refused to resolve any of the issues identified by Twin Lakes. Eagle West continued to rely on the preliminary analysis in Degenkolb's report to insist that the remaining structural elements be included in the rebuild despite the fact that the Degenkolb report failed to: (a) address the permitting demands for reconstruction; (b) provide any explanation for the cost of the construction activities it suggested to conditionally preserve the existing structure; or (c) confirm that further issues would not arise during the course of construction with the existing structural

COMPLAINT - 6

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

components that had been sitting on the property for over 15 months. Eagle West thus refused to agree to either of the repair estimates Twin City provided and insisted that the Atlas estimate—now almost a year old—"includes all elements required for the repairs." Eagle West also refused to pay for any additional rental income Twin Lakes lost beyond 24 months from the date of the fire despite the fact that Eagle West was responsible for delaying the start of the rebuild by refusing to agree on the repair estimates Twin Lakes provided that would ensure the rebuild was performed soundly and in compliance with any applicable coding requirements by the City of Federal Way.

3.20. Based on Eagle West's refusal to agree to reconstruct the Building without the existing structural components, Twin Lakes invested additional time, effort, and expense to investigate whether the components could be reused in the rebuild and whether there was any way of doing so while still meeting the code requirements imposed by the City of Federal Way.

3.21. On July 20, 2021, Eagle West sent Wiss, Janney, Elstner Associates ("WJE") to the Property to conduct a site visit to prepare a report to ascertain whether the Building could be reconstructed using the existing framing and foundation.

3.22. On July 28, 2021, Twin Lakes' representative Courtland Pixton asked Eagle West when Twin Lakes could expect to receive WJE's report, whether WJE supported using the existing framing and foundation, and if so, what WJE specifically required for the rebuild. Mr. Pixton specifically noted that Twin Lakes currently had a building permit for the ground-up construction plans submitted to Eagle West, and that "[t]o modify the permit and use the existing framing and foundation, the city of Federal Way will require a supportive letter of opinion from an engineer."

COMPLAINT - 7

3.23. On September 9, 2021, Eagle West provided Twin Lakes with the report prepared by WJE, asserting that "[a]s you can see from the report, reuse of the foundation and existing wood is not only doable, but preferable. . . . If Twin Lakes chooses to tear down the remaining wood and foundation, please note it will be done voluntarily and the cost to do so will not be covered under the policy."

3.24. Eagle West's reliance on the WJE report dated September 9, 2021 was unreasonable; the report's findings did not support Eagle West's insistence on utilizing the damaged structural components for the rebuild. Not only did the report assume that the City of Federal Way would approve the reuse of these structural components, but its preliminary analysis assumes, without sufficient testing, that the structural components in their present state were in sufficiently good condition to be incorporated in the subsequent rebuild. Moreover, despite observations regarding the damaged and dilapidated state of these components, the report calls for many of these materials to be either removed or replaced so that the rebuild could proceed. In other words, the report did not support Eagle West's conclusory—and purportedly definitive—assertions that reusing these components was either "doable" or "preferable."

3.25. On January 7, 2022, an additional report was prepared for Twin Lakes by Wood Environment & Infrastructure Solutions, Inc. ("Wood") regarding the potential of reusing the remaining components of the structure. Wood's report concluded that "reusing the remaining existing structure (reconstruction) is not the best solution. Reconstruction would entail costs that have not been fully enumerated in previous reports . . . Further, while many structural defects that require attention were noted previously by other parties, other defects have not. Some conditions have likely worsened with prolonged weather exposure and will continue to worsen. Upgrades to certain structural components would be required, as indicated by the City of Federal

COMPLAINT - 8

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Way Building Official. These required structural upgrades include anchors in sill plates; wall panel sheathing; and measures to meet demands of the City of Federal Way energy code. An evaluation in accordance with the International Existing Building Code (IEBC) would also be needed. The costs for these additional miscellaneous conditions have not been noted previously. The total costs related to repairing the existing structure are understood to be at least equivalent to 'like new' construction."

3.26. On January 6, 2022, Twin Lakes received a Notice of Violation ("Notice") from the City of Federal Way ("City") after numerous complaints had been sent regarding the dilapidated structural components that Eagle West has insisted be retained and included in the reconstruction of the Building. Citing the materials as a "specific public nuisance" under FWRC 7.030.040, the City directed Twin Lakes to "[r]emove the unfinished/damaged structure including but not limited to; all wood framing, electrical wiring, scrap metal, concrete foundation and perimeter fencing" within 14 days to bring the area into compliance.

3.27. On January 12, 2022, a copy of the January 6 Notice was provided to Eagle West. Despite receiving a copy of the Notice, Eagle West refused to change its position, stating on January 13 that "[o]bviously the area does not need to be completely demolished if Twin Lakes Plaza, LLC, intends to repair and rebuild the structure. . . . If Twin Lakes chooses to completely remove the remaining structure, rather than repair and rebuild using the materials currently in place, please note this additional cost is not covered under the Eagle West policy."

3.28. On January 21, 2022, the City wrote to Twin Lakes in response to its request for an extension to resolve the public nuisance identified in the Notice. Although the City granted an extension until August 1, 2022, the City informed Twin Lakes that it will be issued a fine

unless significant progress is made on demolition or repair of the Building, followed by the City conducting abatement and placing a lien on the Building.

3.29.   On March 2, 2022, Eagle West's independent adjusters at WJE visited the site with two restoration contractors and an environmental consultant to prepare a bid to repair the Building utilizing the existing foundation and framing in its present condition.

3.30.   On March 9, 2022, Rose Environmental ("Rose") prepared a Microbial Evaluation for Remedial Scope of Work at the Building for Eagle West.  Based on its evaluation of the remaining studs and joists, Rose "identified suspect visible microbial growth (SVG), remnant porous materials (GWB, insulation), and char and soot on remaining vertical wood studs and ceiling joists."  Despite Rose's observations of the damage —which did not address structural decay or integrity of the materials—Rose's recommendations included (a) drying the wet materials using heat, dehumidification, ventilation, replacement, or a combination; (b) wire brushing, sanding, scrubbing, blasting, or wiping the wood surfaces; and (c) other extensive cleaning procedures to mitigate lingering contaminants, including the removal of any asbestos containing materials.

3.31.   On April 22, 2022, OnPoint Property Damage Specialists ("OnPoint") completed another repair estimate for Eagle West using the remaining structural components of the Building.  OnPoint's estimate listed an RCV of $1,899,099.84 for the repairs, including the costs of overhead and profit and Washington State sales tax.  Deducting $212,500,06 for depreciation, OnPoint's estimate calculated an ACV of $1,686,549.78 for the Building.  Eagle West has advised that this is the RCV cost of the Building as of April 2022, and it has taken the position it is not responsible for paying for anything beyond the approximately $1.4 million Atlas previously determined it would cost to repair the Building on the date of loss.

COMPLAINT - 10

3.32. On May 2, 2022, Troon submitted a Revised Cost Estimate to Twin Lakes to reconstruct the Building at a cost of $2,157,721.00, excluding items such as the cost of Washington State sales tax at a rate of 10.1%, building permit, and appliances. Troon explained that it was forced to revise its prior repair estimate dated January 21, 2021 due to significant impacts on the construction industry from inflation, cost increases, product availability and delivery times, including the fact that since January 2021, prices for concrete, lumber, and fuel have doubled, and prices for the required subtrades have increased 40% to 55%. Troon estimated that the repairs could be completed on an eight-month construction schedule.

3.33. Eagle West rejected Troon's revised repair estimate, still refusing to agree to any repair estimate that does not incorporate the foundation and framing components that had been sitting on the Property for over 30 months. Moreover, Eagle West took the position that it will pay for the repairs to the Building based on the cost of repairs at the time of the loss, which at the time occurred over 31 months ago. Eagle West has thus refused to account for the drastic increases in the cost of construction since the date of the fire, cost increases that Eagle West is chiefly responsible for by refusing to agree on an appropriate reconstruction plan.

3.34. To date, Eagle West has issued just over $1.1 million in payments under the Policy for the loss. For the bulk of these payments, Eagle West failed to specify under which coverage the payments were being made. Nonetheless, based on the costs Twin Lakes has incurred to date, and the costs Twin Lakes will incur to complete the necessary reconstruction of the Building, which will include the demolition and removal of the existing structural components, as well as the lost rental income that continues to accrue while the repairs continue to be delayed, Eagle West owes Twin Lakes over $1.5 million in contractual and extracontractual damages. The damages include but are not limited to rebuild costs for the Building, estimated

COMPLAINT - 11

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

future costs, lost rent, and unreimbursed expenses Twin Lakes incurred as a result of Eagle West's actions.

### IV.  FIRST CLAIM:  DECLARATORY JUDGMENT

4.1.   **Incorporation by Reference**.  Twin Lakes realleges the allegations of the preceding paragraphs.

4.2.   **Duty to Pay**.  Under the Policy, Eagle West has a duty to pay Twin Lakes for direct physical loss of or damage to the Building occurring during the policy term, including Twin Lakes' lost rental income.

4.3.   **Breach of Duties Under the Policy**.  Eagle West has breached its duty to pay by failing to fully reimburse Twin Lakes for its losses in response to Twin Lakes' tender.

4.4.   **Breach of Extra-Contractual Duties**.  Eagle West has acted in bad faith and violated various insurance claims handling regulations and statutes by failing to deal fairly with Twin Lakes and give equal consideration to (and not put its own interests ahead of) Twin Lakes' financial interests, and failing to conduct a full, fair, and prompt investigation at its own expense.

4.5.   **Actual Controversy**.  An actual controversy of a justiciable nature exists between Twin Lakes and Eagle West regarding the rights and obligations of the parties with respect to Twin Lakes' claim.  Issuance of declaratory relief by this Court will terminate the existing and any future controversies between the parties.

4.6.   **Relief Sought**.  Twin Lakes seeks a declaratory judgment declaring that: (a) Twin Lakes' losses and expenses resulting from the damage to its Building are covered by the Policy; (b) Twin Lakes need not use the framing and other components or foundation of the Building in the reconstruction; (c) Eagle West is responsible for timely and fully paying all such claims; (d) Eagle West breached the Policy and violated various insurance claims handling regulations and

statutes; and (e) Eagle West is obligated to pay Twin Lakes' reasonable attorney fees, costs, and disbursements in obtaining coverage.

## V. SECOND CLAIM: BREACH OF CONTRACT

5.1. **Incorporation by Reference**. Twin Lakes realleges the allegations of the preceding paragraphs.

5.2. **Breach of Contract**. Eagle West has failed to: (1) agree to fund the full costs of returning the Building to its pre-loss condition using like-kind and quality materials as required by the Policy; and (2) fully reimburse Twin Lakes for its covered losses.

5.3. **Damages**. As a direct and proximate result of Eagle West's breach of its insurance contract, Twin Lakes has been deprived of the benefits of its insurance coverage.

5.4. **Additional Damages**. As another direct and proximate result of Eagle West's breach of the Policy, Twin Lakes has been forced to incur attorney's fees and other expenses to prosecute this action.

## VI. THIRD CLAIM: VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT, RCW 19.86

6.1. **Incorporation by Reference**. Twin Lakes realleges the allegations of the preceding paragraphs.

6.2. **Violations of the Unfair Claims Settlement Practices Act**. Washington has adopted the Unfair Claims Settlement Practices Act under Chapter 284-30, et seq. of the WAC. Eagle West has violated several provisions of this Act, including but not limited to, the following: (a) misrepresenting pertinent facts such as the estimated costs for repair under WAC 284-30-330(1); (b) failing to acknowledge and act reasonably promptly upon communications from Twin Lakes and its representatives under WAC 284-30-330(2); (c) failing to adopt and

implement reasonable standards for the prompt investigation of claims under WAC 284-30-330(3); (d) making claim payments to Twin Lakes not accompanied by a statement setting forth the coverage under which the payments were made pursuant to WAC 284-30-330(9); (e) failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for its insistence that the remaining structural components and foundation of the Building be used in reconstruction of the Building pursuant to WAC 284-30-330(13); (f) failing to fully disclose to Twin Lakes all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented pursuant to WAC 284-30-350(1); and (g) failing to respond to communications from Twin Lakes or its representatives pursuant to WAC 284-30-360(3); and (h) failing to review the accuracy of the actual cash value estimates prepared on its behalf pursuant to WAC 284-30-380(7).

6.3.   **Violations of CPA**.  Violations of WAC 284-30 *et seq.* are *per se* violations of the Washington Consumer Protection Act, RCW 19.86, entitling Twin Lakes to exemplary damages, attorney fees, and costs.

6.4.   **Damages**.  As a direct and proximate cause of this conduct, Twin Lakes suffered damages to its business and property in an amount to be established at trial.

### VII.  FOURTH CLAIM:  INSURANCE BAD FAITH

7.1.   **Incorporation by Reference**.  Twin Lakes realleges the allegations of the preceding paragraphs.

7.2.   **Duty of Good Faith and Fair Dealing**.  Eagle West owes Twin Lakes a duty of good faith and fair dealing.  Pursuant to that duty, Eagle West was obliged to refrain from taking any action that is unreasonable or unfounded.  Eagle West was, likewise, required to conduct a full, fair, and prompt investigation at its own expense.  Eagle West was also required to deal

fairly with Twin Lakes, give equal consideration to Twin Lakes' interests, and not put its own financial interests ahead of Twin Lakes' financial interests.

7.3.     **Eagle West Acted in Bad Faith**.  Eagle West breached its duty of good faith and fair dealing as described in this Complaint.

7.4.     **Damages**.  As a direct and proximate result of this conduct, Twin Lakes has suffered damages in an amount to be proven at trial.

## VIII.  RESERVATION OF RIGHT TO AMEND COMPLAINT FOR VIOLATION OF THE INSURANCE FAIR CONDUCT ACT, RCW 48.30.015

8.1.     **Incorporation by Reference**.  Twin Lakes realleges the allegations of the preceding paragraphs.

8.2.     **IFCA Notices**.  Twin Lakes sent IFCA notices to the Washington Office of the Insurance Commissioner and to Eagle West on December 2, 2020 and March 10, 2021.

8.3.     **Notice Period**.  More than 20 days have passed since Twin Lakes provided notice of its IFCA claims to the Office of the Insurance Commissioner and Eagle West.  Twin Lakes has complied with all statutory notice requirements for asserting an IFCA claim in this matter.

8.4.     **IFCA Violation**. Eagle West's acts, as outlined above and in Twin Lakes' IFCA notices, constitutes an unreasonable denial of a claim for payment of benefits under the Policy.

## IX.  PRAYER FOR RELIEF

Twin Lakes prays for the following relief:

9.1.     **Declaratory Judgment**. Enter declaratory judgment as stated in this Complaint;

9.2.     **Monetary Damages**.  Award Twin Lakes the full benefit of the Policy and recovery for all of its contractual and extra-contractual damages arising from Eagle West's

COMPLAINT - 15

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

breaches of the Policy, Consumer Protection Act, bad faith, and violation of the Insurance Fair Conduct Act.

9.3. **Attorneys' Fees and Costs of Suit**. Award Twin Lakes its costs and attorneys' fees incurred pursuant to *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wn.2d 37 (1991) and its progeny, the Washington Consumer Protection Act, Insurance Fair Conduct Act, or under any other basis permitted by law or equity;

9.4. **Treble Damages Under the Consumer Protection Act**. Award Twin Lakes treble damages up to $25,000 under the Consumer Protection Act;

9.5. **Treble Damages Under the Insurance Fair Conduct Act**. Award Twin Lakes treble damages up under the Insurance Fair Conduct Act;

9.6. **Interest**. Award Twin Lakes pre- and post-judgment interest on the amount of insurance benefits awarded; and

9.7. **Other Relief**. Grant Twin Lakes such other relief as may be just, legal, equitable, and proper.

DATED this 1st day of July, 2022.

**GORDON TILDEN THOMAS & CORDELL LLP**
Attorneys for Plaintiffs

By    s/ *Kasey D. Huebner*
    Kasey D. Huebner, WSBA #32890
    Miles C. Bludorn, WSBA #54238
    600 University Street, Suite 2915
    Seattle, Washington 98101
    206.467.6477
    khuebner@gordontilden.com
    mbludorn@gordontilden.com

COMPLAINT - 16

GORDON TILDEN THOMAS CORDELL | 600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477